C. P. VANSTORY v. A. G. THORNTON et al.

●

(PLAINTIFF'S APPEAL).

*Homestead—Priority of Liens.*

(For syllabus see paragraph 6 of the syllabus in same case reported in 112 N. C., at page 196).

CLARK, J., dissents, *arguendo*.

Under a former decree of the Court (following the directions of the opinion of the Supreme Court as reported in *Vanstory* v. *Thornton*, 112 N. C., 196) the land described in the pleadings and in the several mortgages mentioned was sold by commissioners appointed for that purpose, and a report of sale made to CUMBERLAND Superior Court at Fall Term, 1893. At said last mentioned term of the Court an order and decree of confirmation was made, and the plaintiff thereupon insisted that the proceeds of sale, or so much thereof as was sufficient for that purpose, should be applied to plaintiff's judgment, interest and costs, before any part thereof was set apart to defendant as a homestead, or in lieu of homestead, or applied to the previous mortgages, and moved the Court to apply the proceeds according to his contention. The Court declined to so apply the pro-

ceeds, except the excess of one thousand dollars, and signed judgment accordingly, and thereupon plaintiff excepted and appealed.

Mr. *Thomas H. Sutton*, for plaintiff (appellant).
Messrs. *George M. Rose* and *N. A. Sinclair*, for defendants.

BURWELL, J.: The decree making a distribution of the fund arising from the sale of the land described in the mortgages is in exact accordance with the judgment of this Court at February Term, 1893 (112 N. C., 196).

CLARK, J., dissenting: The decision of this case, 112 N. C., 196, is *res judicata* as to what had then taken place, but in regard to the directions as to the distribution of the fund not then in existence the opinion of the Court, while clearly expressed (p. 206), was necessarily *obiter*. It was not a decision upon any point then before the Court, and is now presented directly for the first time.

The Court in that case (p. 209) advert to the fact that *Adrian* v. *Shaw*, 84 N. C., 832, had affirmed the assignability of the homestead right, and that *Fleming* v. *Graham*, 110 N. C., 374, had denied it; and the majority of the Court adhered to the older instead of the later decision. Taking, therefore, that *Adrian* v. *Shaw* is the settled rule as to the disposition of this case, it would seem that the *obiter dictum* of the Court, which now comes up for direct decision by the plaintiff's appeal, is an inadvertence.

*Adrian* v. *Shaw* holds that the conveyance of the homestead lot carries it to the grantee clothed with the homestead right. If so, when conveyed by such grantee to another grantee it must preserve the same immunity. Now, the conveyance of the homestead lot by Thornton and wife to his mortgagee carried the same rights, if the mort-

gage was not paid, as a direct conveyance would, and when conveyed by the mortgagee (or by sale under the mortgage) the homestead lot passed to a purchaser; it passed of course with the same immunity.  A mortgage is no broader than a deed, and if a conveyance of the homestead lot by deed does not forfeit the homestead right, but it still lives in the hands of the grantee, the same is true of a mortgage conveyance.  Under the decision in *Adrian* 'v. *Shaw* the homestead right passes to the grantee of the homestead lot, and on to his grantee *ad infinitum* till the homestead right determines.  It adheres like the shirt of Nessus and cannot be annihilated by mortgaging the homestead lot any more than by a direct conveyance of it.  The homestead right therefore attaches still to the homestead lot in the hands of the purchaser.  Whatever it is worth, he has it.  It cannot be assessed or turned into money and divided out. It exists still, and is there.  The proceeds of the sale are therefore, necessarily, the proceeds of the lot just in the same condition as the homesteader, if he had sold direct instead of through the medium of a mortgage, would hold the money.  It is not protected by the homestead right. That has gone to the purchaser with the lot, and is still outstanding against the creditors.  If the lot is protected from sale for Thornton's debts in the hands of the purchaser by virtue of Thornton's homestead right, which is imputed to him, how can this $1,000 be also withheld from the creditors?  If the lot when sold had become subject to lien of judgment, then the proceeds would be exempt, but both the lot and the proceeds too cannot be exempt. The lot, with the homestead right attendant and appurtenant, is in the hands of the purchaser from the grantee (or mortgagee) of Thornton.  The lot and the homestead right adherently are intact in his hands.  This $1,000 must be something in excess and outside of the value of

the homestead lot with the life-time exemption. It is, therefore, as held in *Gulley* v. *Thurston*, 112 N. C., 192, applicable to liens in their order, and as the plaintiff's judgment is an older lien than that of the mortgagees, the $1,000 is applicable to the judgment. The plaintiff's judgment lien could not be divested by the subsequent mortgages nor the sale under them, and could be asserted against the lot in whosoever hands it may be, when the homestead right determines. The plaintiff's claim against this $1,000 is by virtue of his lien on the excess. *Gulley* v. *Thurston, supra.* If a deed of the homestead lot does not forfeit the homestead exemption, but it passes, adherent to the lot, to the grantee, the conveyance by mortgage deed, and then by sale under the mortgage, necessarily cannot forfeit the homestead exemption, but it still exists in the hands of the purchaser, attached to the lot. The exemption still existing there, to protect the lot in the hands of the purchaser, the homesteader cannot claim another exemption in the $1,000 received from the sale of the lot. That would be to " eat his cake and have it too." To hold that the lot was exempt in the hands of the purchaser, and that the proceeds (which could be invested in another homestead) were exempt in the hands of the seller, would be to give the debtor two homesteads, which the Court has not yet done. And if the $1,000 would not be exempt in the hands of the seller it cannot be so, even temporarily, in the hands of his assignees, the mortgagees.

When this case was last here, 112 N. C., 196, the Court distinctly held with *Adrian* v. *Shaw* that a deed of a homestead lot conveyed to the purchaser the indestructible homestead right of the seller, which could not be severed from it. Logically, therefore, the Court must be deemed to have held that a mortgage, which is a conditional deed, and a sale under it, could not destroy the homestead right

or dissever it from the homestead lot.　The intimation to the contrary, given in the directions as to the distribution of the fund, as the subject was not yet in existence, was an *obiter* contrary to the ruling in *Adrian* v. *Shaw*.　As was said (112 N. C., p. 207), "we should prefer to recall *dicta* which seem to be in conflict with that case."

As the "advantage," "right" or "estate" is assignable, and the purchaser of the lot holds that "advantage" (112 N. C., 210), it follows that the "advantage" does not at the same time reside in the $1,000 fund, and there is no statute and no decision and certainly nothing in the Constitution which authorizes its subtraction, even temporarily, from liability for the judgment debtor's debt, any more than for its permanent exemption.

Indeed, this case is on "all-fours" with and undistinguishable from *Allen* v. *Bolen*, at this Term.　In that case, as in this, the homesteader was estopped by his deed from claiming the homestead exemption for himself.　In that case also, as it should be held in this, the purchaser, under the lien of the prior docketed judgment, took the land in preference to the subsequently registered conveyance of the homesteader.