L. L. FARRIS v. S. C. HENDRICKS, D. H. COX, L. H. COX, R. F. COX, TRADING AS COX LUMBER CO.; SPENCER LUMBER COMPANY, WIGGINS LUMBER COMPANY, R. T. HOOD, A. E. WOLTZ, JOHN S. JENKINS AND J. W. GIBSON.

(Filed 2 January, 1929.)

**1. Judgment Lien—Homestead.**

A duly docketed judgment is a lien on the lands of the judgment debtor, C. S., 614, but is subject to the homestead interest in the lands as provided by Const., Art. X, sec. 2.

**2. Homestead—Transfer or Incumbrance—Requisites—Private Examination of Wife.**

Where there is a homestead right in land, Cons., Art. X, sec. 2, the homesteader may alienate the same only with the joinder and private examination of the wife. Const., Art. X, sec. 8.

**3. Homestead—Nature, Acquisition, and Extent—Property Constituting Homestead—Mortgages.**

Where a mortgage on land is foreclosed and the land brings at the foreclosure sale a sum more than sufficient to pay the mortgage debt, the surplus remaining to the Constitutional limit of one thousand dollars is to be regarded as realty to which the homestead right attaches when the same has not been waived.

**4. Homestead—Nature, Acquisition, and Extent—Rights of Homesteader —Judgments.**

Where the judgment debtor has executed a mortgage on his lands with the privy examination of his wife after the judgment has been docketed against him and the mortgage has been foreclosed and a sum of money in excess of that required to pay off the mortgage debt, and within the

FARRIS *v.* HENDRICKS.

one thousand dollar exemption allowed by the Constitution, is obtained in the foreclosure sale and the surplus has been deposited in the office of the clerk of the court, which is the subject of the action between the judgment creditor and the judgment debtor claiming his homestead therein: *Held*, the latter is not entitled to the present worth of the *corpus* of the funds in the clerk's hands computed under the expectancy of life under the mortuary table, but only the interest thereon is available to him or to those who may claim the homestead under the provisions of the Constitution, Art. X, sec. 2.

**5. Appeal and Error—Review—Scope and Extent in General.**

Where the cause of action has been exclusively tried upon one theory in the Superior Court, the Supreme Court on appeal will determine it upon that theory alone.

APPEAL by plaintiff from *Harding, J.,* and a jury, at September Term, 1928, of GASTON. No error.

It was in evidence that (1) The defendant, Spencer Lumber Co., had a judgment for $208.11, duly docketed in the Superior Court of Gaston County, on 11 July, 1926. (2) That plaintiff owned a house and lot in Belmont, Gaston County. He and his wife executed to defendant, R. T. Hood, a mortgage for $700, which was recorded 31 July, 1926, in Book 186, p. 390, registry for Gaston County. R. T. Hood advertised and sold the house and lot under the mortgage on 3 September, 1927, and made a deed dated 10 October, 1927, to defendant J. W. Gibson. The land at the sale brought $1,296.75. The plaintiff was 40 years old on 24 September, 1927, and had a wife and six children, the youngest being three years old. S. C. Hendricks is the clerk of the Superior Court of Gaston County. J. W. Gibson paid the purchase price to R. T. Hood, mortgagee, who retained his debt, and on 17 December, 1927, paid the balance in excess of the mortgage $509.49 to said clerk.

Plaintiff duly demanded his homestead in the excess after paying the mortgage.

The issues submitted to the jury and their answers thereto, were as follows:

"1. Did plaintiff own house and lot set out in the complaint? Answer: Yes.

"2. What sum was paid to S. C. Hendricks, clerk of the court, by mortgagee Hood? Answer: $509.49.

"3. What was the age of L. L. Farris at the time of the said payment? Answer: 40 years.

"4. What amount, if any, is the plaintiff entitled to recover of the defendant, S. C. Hendricks? Answer: The plaintiff is not entitled to recover the *corpus* of the fund of $509.49, but is entitled to have the

income therefrom paid to him by the clerk of the Superior Court as it accrues from year to year during the life of the plaintiff, and at his death, to the wife of the plaintiff, if she survives him, and after her death until the youngest child arrives at the age of 21 years, if the youngest child should become 21 years of age after the death of plaintiff Farris and after the death of the plaintiff's wife."

To the findings of the fourth issue as above, under the peremptory instruction of his Honor, the plaintiff duly excepted and assigned error.

The following judgment was rendered in the court below: "This cause coming on to be heard before his Honor, Wm. F. Harding, judge presiding, and a jury, and the jury having answered the issues as appear of record: It is therefore considered, ordered and adjudged that the plaintiff is not entitled to recover the *corpus* of the fund of $509.49, but is entitled to have the income therefrom paid to him by the clerk of the Superior Court as it accrues from year to year during the life of the plaintiff, and at his death to the wife of the plaintiff if she survives him, and after her death until the youngest child arrives at the age of 21 years; if the youngest child should become 21 years of age after the death of plaintiff Farris and after the death of the plaintiff's wife, that the costs of the action be paid out of funds in the hands of the clerk."

Plaintiff tendered a judgment for $409.82, the present cash value or worth of his homestead of $509.49, based on the table of expectancy. Plaintiff excepted to the judgment as rendered, assigned error and appealed to the Supreme Court.

*Geo. W. Wilson for plaintiff.*
*Geo. B. Mason for defendant Spencer Lumber Co.*

CLARKSON, J. The plaintiff had a house and lot in Belmont, Gaston County. The defendant, Spencer Lumber Co., obtained a judgment for $208.11 and duly docketed same in the Superior Court of Gaston County. This was a lien on plaintiff's land. C. S., 614. Thereafter plaintiff and his wife executed a mortgage on the house and lot. It was sold to pay the mortgage debt and there was an excess over and above the mortgage of $509.49, which was paid to the clerk of the Superior Court of said county.

The Constitution of North Carolina, Article X, section 2, is as follows: "Every homestead, and the dwellings and buildings used therewith, not exceeding in value one thousand dollars, to be selected by the owner thereof, or in lieu thereof, at the option of the owner, any lot in a city, town or village, with the dwelling and buildings used

thereon, owned and occupied by any resident of this State, and not exceeding the value of one thousand dollars, shall be exempt from sale under execution or other final process obtained on any debt. But no property shall be exempt from sale for taxes, or for payment of obligations contracted for the purchase of said premises."

Article X, section 8: "Nothing contained in the foregoing sections of this article shall operate to prevent the owner of a homestead from disposing of the same by deed; but no deed made by the owner of a homestead shall be valid without the voluntary signature and assent of his wife, signified on her private examination according to law."

Is plaintiff, under the mortuary tables, C. S., 1790, entitled to the present worth or cash value in $509.49, said fund representing his homestead in a house and lot, excess after paying the mortgage on the house and lot? We think not. Plaintiff cites *Wilson v. Patton,* 87 N. C., 318; *Leak v. Gay,* 107 N. C., 468-483; *Montague v. Bank,* 118 N. C., 283; *Duplin County v. Harrell,* 195 N. C., 445; *Cheek v. Walden,* 195 N. C., 752.

In the *Montague case, supra,* it is said: "Should the land sell for more than the mortgage debt, the surplus money is still realty, in which the debtor can assert his homestead, as against any execution. *Hinson v. Adrian,* 92 N. C., 121."

By a careful perusal of the cases cited by plaintiff, it will be noted that they relate to the constitutional right of the debtor to the homestead in the equity of redemption, or the proceeds in the surplus after sale under mortgage or deed of trust, being real estate, when duly demanded by the homesteader and not waived. These cases must be read in the light of the facts of the particular case. In the *Wilson* and *Leak cases, supra,* there are *dicta* sustaining plaintiff's contentions. The *Wilson case* was cited in the *Duplin County case, supra,* on the aspect of the homesteader claiming his homestead in certain funds and the proceeds from the sale of the homestead. See *Gulley v. Thurston,* 112 N. C., at p. 112-13.

In 32 A. L. R., Anno., p. 1334, it is said: "In *Gulley v. Thurston* (1893), 112 N. C., 192, 12 S. E., 13, the Court, in holding that a judgment lien is superior to a subsequently registered mortgage on land held by the debtor, which is over and above the statutory homestead limit, said: 'The question which is presented by this appeal is, which has a superior lien on land of the debtor outside of his allotted homestead—his judgment creditor whose judgment has been duly docketed, or his mortgagee whose mortgage was executed and registered after the docketing of the judgment? A bare statement that under the law (Code, sec. 435, C. S., 614), the docketing of a judgment creates a

lien on all the land of the debtor in the county where docketed, from the date of the docketing, and that a mortgage is a lien only from the registration, would seem to be a sufficient answer to this question. It cannot be that the act of a debtor and a third party can impair or destroy the rights of the judgment creditor as to the excess over the homestead.' In *Vanstory v. Thornton* (1893), 112 N. C., 196, 34 Am. St. Rep., 483, 17 S. E. 566, the Court overruled the earlier case of *Leak v. Gay* (1890), 107 N. C., 468, 12 S. E., 312, and held that a judgment creditor has a lien on any surplus over and above the homestead exemption, and no act of the debtor can impair the creditor's right under this lien. The Court said: 'In some states a docketed judgment creates no lien on the homestead land, but in this State such a judgment creates a lien on all the land of the debtor, both that outside of the homestead boundaries and that within those boundaries, the only difference being that the lien on that which is within the homestead boundaries is not enforceable by execution or other final process until there has come about, in some way, a termination of the debtor's constitutional exemption rights in this land, which rights, vested in him by the organic law, may be prolonged after his death, for the benefit of his widow in some instances, and in some for the benefit of infant children. As we have said, he cannot now enforce his lien on the homestead land, but his debtor cannot displace that lien by any act of his. It is fixed on the land by law, and this Court can only recognize and at the proper time enforce it.' "

In the *Vanstory case, supra,* at p. 210, it is said: "If there is to be any present division of this fund between the parties, it must be a matter of arbitration or agreement among themselves, for the courts have no rule by which to determine what exemption rights are worth in cash, their present value, the length of their duration depending on too many contingencies." These principles enumerated in the *Vanstory case,* are now applicable.

The General Assembly of 1905, chap. 111, passed the following: C. S., 729: "The allotted homestead is exempt from levy so long as owned and occupied by the homesteader or by any one for him, but when conveyed by him in the mode authorized by the Constitution, Article X, section eight, the exemption ceases as to liens attaching prior to the conveyance. The homesteader who has conveyed his allotted homestead may have another allotted, and as often as is necessary. This section shall not have any retroactive effect."

This Court in *Sash Co. v. Parker,* 153 N. C., p. 130, held that this section is in accordance with the views of the Court and expresses the proper construction of Article X, section 2. It has been repeatedly held

since, that the homestead exemption ceases upon its conveyance by the homesteader, in accordance with Const., Art. X, sec. 8, *supra. Caudle v. Morris,* 160 N. C., 168; *Crouch v. Crouch,* 160 N. C., 447; *Watters v. Hedgpeth,* 172 N. C., 310; *Duplin County v. Harrell, supra; Cheek v. Walden, supra.*

Defendant, Spencer Lumber Co., contends: "That the homestead right is a creature of the Constitution (Art. X, sec. 2, *supra*), and that neither the Constitution nor any statute makes any provision for paying to the homesteader the present cash value out of the funds, although 'there are several opinions of this Court containing *dicta* to that effect. It respectfully insists that they are erroneous, and are not supported by authority. If such should be permitted it is easy to conceive of a case in which the vested rights of judgment creditors in and to the fund at the end of the homestead period would be divested, contrary to the provisions of the Constitution. A young judgment debtor, having a long expectancy, if allowed to receive the present cash value of the fund, would receive substantially the whole thereof, thus divesting or impairing the judgment lien against the entire fund, except the small balance left. If plaintiff is entitled to the present value of his expectancy, same should be computed on the basis of $4\frac{1}{2}$ per cent and not 6 per cent. Laws 1927, chap. 215—'This bill shall apply only to estates hereafter created.' Amending C. S., 1791."

We think the law is in accordance with defendant's contention that the homesteader is not entitled to the present cash value.

It should be observed that this case is presented upon a peculiar state of facts, and was tried upon a singular theory, but we are not at liberty to travel outside of the record or to determine the case on a theory different from that upon which it was tried.

We call attention to the record that suggests important questions vital that arise in everyday adjustments not presented to this Court on the present theory of the case: (1) Spencer Lumber Co., had a *first lien* on the house and lot under C. S., 614. (2) Thereafter plaintiff and his wife made a mortgage on this house and lot and it was sold under the terms of the mortgage and purchased by J. W. Gibson. The land was still subject to the lien of the judgment. It brought $1,296.75, more than enough to pay the judgment of $208.11.

Plaintiff, not having waived his homestead, was entitled to a homestead in the equity. *Duplin County v. Harrell, supra; Cheek v. Walden, supra.* On the theory of the case as now presented to this Court, in the judgment there is

No error.